UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
UNITED STATES OF AMERICA,      :
     :
     :   **MEMORANDUM AND ORDER**
-against-      :   11-CR-486 (DLI)
     :
IBRAHIM KURTI, et. al.,      :
     :
     Defendants.      :
-------------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

Before the Court is defendant Ibrahim Kurti's ("Defendant") *pro se* motion to dismiss the indictment based on an alleged violation of his right to a speedy trial, submitted to the Court at a status conference held on December 8, 2011.[1] (*See* Def. Kurti's *Pro Se* Mot. dated Dec. 8, 2011 ("Kurti 12/8/11 Mot."), Doc. Entry No. 423.) The government opposes the motion. (*See* Gov't Opp. Ltr. to Mot. to Dismiss dated Apr. 2, 2013 ("Gov't Opp. Ltr."), Doc. Entry No. 784.) On behalf of Defendant, defense counsel submitted a reply to the government's opposition letter. (Def. Reply Ltr. to Opp. Ltr. dated Apr. 8, 2013 ("Def. Reply Ltr."), Doc. Entry No. 794.) For the reasons set forth below, Defendant's motion is denied.

## BACKGROUND

Defendant is one of over 56 co-defendants indicted in a narcotics trafficking and money laundering case.[2] *See United States v. Thaqi et al.*, 11-cr-00486 (DLI) (JMA). A sealed Superseding Indictment was filed against Defendant and co-defendants on July 7, 2011. (See

---

[1] Defendant has been represented by counsel appointed by the Court pursuant to the Criminal Justice Act since the inception of this case. Notwithstanding Defendant's representation by counsel, the Court entertains Defendant's motion. *See Delgado v. Duncan*, 2003 WL 23185682, at *5 (E.D.N.Y. Nov. 4, 2003) (collecting cases).

[2] Some indicted defendants remain unapprehended and others have only recently been apprehended.

Doc. Entry No. 4)[3] Defendant was arraigned on the Superseding Indictment on September 7, 2011. (See Doc. Entry No. 319) Defendant has been charged with conspiracy to import marijuana and conspiracy to distribute and possess with intent to distribute marijuana in violation of 18 U.S.C. §§ 3551 *et. seq.* and 21 U.S.C. §§ 841(b)(1)(A)(vii), 846, 960(b)(1)(G), 963. At the time of his arrest in this case, Defendant was incarcerated, serving a 276-month sentence of imprisonment upon his conviction in the U.S. District Court for the Southern District of New York ("SDNY") for narcotics distribution. *See United States v. Ibrahim Kurti*, 02-cr-01014 (LAP) (S.D.N.Y. 2002).

On August 17, 2011, Defendant filed a *pro se* motion in the instant action requesting, *inter alia*, to: (1) "[e]xercise his right to a quick and speeding [sic] trial by his peers absent undue delay;" and (2) "[i]nterpose this open-ended and continuous objection to any motion for continuance by the Government Attorney(s), and/or [a]ny other party or source seeking same, that would ultimately operate to toll the trial time clock." (Def. Kurti's *Pro Se* Mot. dated Aug. 17, 2011 ("Kurti 8/17/11 Mot.") at 1.) He further emphasized that the Court should "immediately schedule a trial date, date certain, without further delay." (*Id*. at 5.)

At a status conference on September 7, 2011, at which Defendant was not present, the Court designated the case as complex based on the number of defendants, the nature of the charges, and the volume and complicated nature of discovery involved. (*See* Gov't Opp. Ltr., Ex. A, Sept. 7, 2011 Status Conference Transcript ("9/7/11 Tr.") 12:20-13:2, Doc. Entry No. 784.) At the conference, the government represented that discovery consisted of extensive wiretap evidence from this and other federal districts, video and audio recordings, dozens of documentary, drug and money seizures, and forensic analysis of defendants' electronic devices,

---

[3] The Superseding Indictment was unsealed upon the government's motion on July 14, 2011. (See Doc. Entry Nos. 5 and 6).

2

among which were computers, laptops, and personal wireless devices many of which contain encrypted data, and that it was in the process of preparing global plea offers. (9/7/11 Tr. 9:16-10:23, 12:3-6.) Accordingly, the Court stated that time was excluded for all defendants until the next status conference set for December 8, 2011. (*Id.* at 38:23-39:1.)

On September 8, 2011 the Court held a status conference to discuss with Defendant the issues covered at the September 7, 2011 status conference. Defendant stated his open-ended objection to the granting of any continuances, moved for an order directing the government to comply with discovery within fourteen days, and moved for severance from his co-defendants to enforce his speedy trial rights. (*See* Gov't Opp. Ltr., Ex. B, Sept. 8, 2011 Status Conference Transcript ("9/8/11 Tr.") 21:16-22:4, Doc. Entry No. 784.) The Court addressed Defendant's August 17, 2011 motion and his other requests raised at the conference, and denied his motion to the extent he opposed continuances of the case and requested discovery within fourteen days.

The Court explained that it had to "overrule [the] objection to the continuance in the interests of justice here because of the complexity of the case." (*Id*. at 22:9-12.) The Court further elaborated that the nature of the case, the large number of defendants (at that time, 56 defendants, including defendants in custody and released on bond), and the nature of discovery (including both electronic data seized from computers and wiretap evidence from other federal districts) supported the Court's decision to deem the case "complex" and to deny his motion. (*Id*. at 22:13-23:4.) Additionally, the Court denied Defendant's *pro se* motion for severance as premature, without prejudice to file at a later date. (*Id*. at 23:3-23.) The Court reiterated that time was excluded until the December 8, 2011 status conference based on the complex nature of the case and in the interests of justice. (*Id.* at 24:12-14.)

At the December 8, 2011 status conference, defense counsel articulated Defendant's continued objection to any adjournments and to the designation of this case as complex. (*See* Gov't Opp. Ltr., Ex. C, Dec. 8, 2011 Status Conference Transcript ("12/8/11 Tr.") 3:14-19, Doc. Entry No. 784.) While noting Defendant's continued objection to adjournments and to the complex case designation, the Court explained that it is within the Court's discretion to determine whether a case is deemed complex, and, once such a decision is made, the Court does not need the consent of the parties for adjournments or to exclude time. (*Id.* at 5:17-8:4.) The Court again explained at length the justifications for designating the case complex and overruled Defendant's objection to the adjournments. (*Id.*)

At the December 8, 2011 conference, Defendant also submitted to the Court a *pro se* motion to dismiss the indictment for violations of his speedy trial and double jeopardy rights. (*Id.* at 8:8-13, 9:1-2, 9:15-16.) The Court orally denied Defendant's motion on double jeopardy grounds at the status conference[4] and reserved judgment with respect to the speedy trial issues to determine whether Defendant was raising new issues or relitigating the same issues the Court already had ruled on at the September 8, 2011 and December 8, 2011 status conferences.

Upon review of the record of this case and the papers submitted with respect to defendant's December 8, 2011 speedy trial motion, the Court concludes that Defendant is relitigating the same issues he raised in his August 17, 2011 motion to dismiss, which the Court denied. Accordingly, the Court construes Defendant's motion as one for reconsideration.

---

[4] At the status conference, the government clarified that, with respect to the instant prosecution of Defendant, the government will rely solely on conduct that transpired after the entry of judgment in the prior prosecution of Defendant in the SDNY. (12/8/11 Tr. 10:7-14:14.) Accordingly, the Court denied Defendant's motion as the Court was satisfied that there would be no overlap between the two prosecutions. (*Id.* at 15:1-6.)

## DISCUSSION

### A. Legal Standard

The court is mindful that *pro se* submissions, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Thus, the Court interprets Defendant's motion "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006) (emphasis omitted).

"The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transport, Inc.*, 70 F. 3d 255, 257 (2d Cir. 1995). "The major grounds justifying reconsideration are an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Hinds County, Miss. v. Wachovia Bank N.A.*, 708 F. Supp. 2d 348, 369 (S.D.N.Y. 2010) (citation and internal quotation marks omitted). Reconsideration is not a proper tool to relitigate arguments and issues already considered by the court in deciding the original motion. *Id.*; *United States v. Gross*, 2002 WL 32096592, at *4 (E.D.N.Y. Dec. 5, 2002).

### B. Application

Defendant argues that the Court should reconsider the denial of his motion to dismiss the indictment for violations of his speedy trial rights, because: (a) the Court's stated reasons for denying his August 17, 2011 Speedy Trial motion were insufficient under 18 U.S.C. § 3161(h)(7)(A); (b) the complexity of the case should not justify an opposed "ends-of-justice" continuance, particularly where Defendant waived his right to pretrial motions to protect his

speedy trial rights; and (c) the "ends of justice" do not justify continuance. (*See* Kurti 12/8/11 Mot. at 2-4.)

For the reasons set forth below, the Court finds that neither Defendant's statutory nor constitutional speedy trial rights have been violated. Moreover, Defendant has made no showing of a change in the controlling law or the need to correct a clear error or to prevent manifest injustice. He has presented no new evidence of legal arguments in support of his motion; rather, he seeks to relitigate issues previously resolved by this Court. Accordingly, Defendant's motion for reconsideration is denied.

1. Speedy Trial Act

Under the Speedy Trial Act, a defendant must be tried within 70 days from the date of indictment or the defendant's first appearance before a judicial officer, whichever occurs later. 18 U.S.C. § 3161(c)(1). The Speedy Trial Act provides for the exemption of certain periods of time from the computation of the 70-day period, including "[w]hether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section." *Id.* § 3161(h)(7)(B)(ii).

The Court properly designated the case complex and set forth on the record specific reasons for the complex case designation and the "ends of justice" continuances. Defendant relies on *Zedner v. United States*, 547 U.S. 489 (2006) to argue that the Court did not sufficiently explain its reasons for the "ends of justice" continuances as required under the Speedy Trial Act. In *Zedner*, the Supreme Court found Defendant's rights under the Speedy Trial Act were violated, because the district court "never made an express finding on the record" explaining the

reasons for the ends of justice continuance. *Zedner*, 547 U.S. at 506-07. Such is not the case here.

The Court provided specific reasons for the complex case designation at the September 7, 2011 status conference. The Court explained these reasons to Defendant at the September 8, 2011 and December 8, 2011 status conferences. Indeed, the case contains a large number of defendants (at the time of the motion, 56 defendants and more have since been added to the case) and a large amount of varied forms of evidence, including extensive forensic analysis of electronic data, approximately fourteen months of wiretaps from investigations conducted in this and other federal districts around the country, evidence seized in Albania, hundreds of hours of video and audio recordings, and more than two dozen seizures of narcotics and narcotics-related proceeds. (*See* 9/8/11 Tr. 12:4-8, 15:18-16:11, 22:10-23:4; 12/8/11 Tr. 6:7-7:22; Gov't Opp. Ltr. at 3.)

Furthermore, the Superseding Indictment contains charges of a Continuing Criminal Enterprise spanning from 1999-2011, conspiracy to import over 1,000 kilograms of marijuana between 2001-2011, conspiracy to distribute and possess with intent to distribute over 1,000 kilograms of marijuana between 2001-2011, international marijuana conspiracy from 2001-2011, conspiracy to distribute over five kilograms of cocaine between 1999-2011, conspiracy to export over five kilograms of cocaine between 1999-2011, conspiracy to import cocaine between 2010-2011, conspiracy to distribute oxycodone between 2010-2011, money laundering conspiracy, and two counts of use of firearms during and in relation to drug trafficking between 2001-2011. (*See* Superseding Indictment dated July 7, 2011, Doc. Entry No. 4.)

"[I]n complex multi-defendant cases, these substantial excludable delays are essential and unavoidable." *United States v. Gallo*, 653 F. Supp. 320, 342 (E.D.N.Y. 1986) (sixteen

7

defendants, over one thousand hours of wiretap recordings, and numerous motions justified "ends of justice" continuance"); *see also United States v. Gonzales Claudio*, 806 F. 2d 334, 341 (2d Cir. 1986) ("Inevitably a case involving twenty defendants and activities occurring over an extended period of time in widely separated locations will require more than the normal period of time for trial preparation by both the prosecution and the defense. Those circumstances have been exacerbated in this case by the sheer volume of evidence collected by the Government.").

The Court properly designated the case complex and pretrial delay is properly excludable from the 70-day speedy trial clock under 18 U.S.C. § 3161(h)(7)(B)(ii). *See United States v. Hernandez*, 862 F. 2d 17, 24 n.3 (2d Cir. 1988) (trial court did not abuse discretion by holding that 19-defendant case was complex and justified delay in commencement of speedy trial). Accordingly, Defendant's statutory right to a speedy trial has not been violated.

### 2. Constitutional Speedy Trial Right

To determine whether a pretrial delay violates the Sixth Amendment, courts look at four factors: "(1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the extent of prejudice to the defendant." *United States v. Vassell*, 970 F. 2d 1162, 1164 (2d Cir. 1992) (citing *Barker v. Wingo*, 407 U.S. 514, 530-32 (1971)).

The first factor is whether Defendant has shown that the length of delay was "presumptively prejudicial." *Doggett v. United States*, 505 U.S. 647, 651-52 (1992) ("Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." (quoting *Barker*, 407 U.S. at 530-31.)) If the government has "prosecuted [its] case with customary promptness," there is no reason to analyze the other *Barker* factors. *Id.* at 652.

8

Since September 7, 2011, when Defendant was arraigned, the government has collected voluminous and varied forms of discovery (including, multi-district federal wiretaps, video and audio recordings, and documentary and physical evidence obtained pursuant to the execution of search warrants), engaged in forensic analysis of electronic devices many of which contain sophisticated encrypted data, distributed discovery to more than 56 defendants, facilitated global plea agreements, and met with defendants who wished to cooperate with the government's investigation. (Gov't Opp. Ltr. at 4.) In addition, there has been substantial pretrial litigation, including detention hearings and an appeal to the Second Circuit Court of Appeals.

Defendant contends that the government cannot claim it has prosecuted the case promptly and expeditiously because it did not timely respond to the instant motion. In addition, Defendant argues the government never responded to concerns he raised regarding allegedly privileged material produced to co-defendants and translations of recorded telephone conversations intended for use against him. (Def. Reply Ltr. at 2.) However, in light of the number of defendants, complexity and number of charges in the indictment, ongoing plea negotiations, and substantial amount and complexity of evidence, Defendant has failed to meet his burden of showing the length of delay was "presumptively prejudicial." Therefore, the Court need not analyze the other *Barker* factors.

Furthermore, even if the Court were to find that the period of delay was presumptively prejudicial, Defendant cannot satisfy the fourth *Barker* factor because Defendant has not demonstrated that he has been prejudiced. In defense counsel's reply letter, Defendant claims he is prejudiced by the pretrial delay because at the Metropolitan Detention Center, Brooklyn ("MDC Brooklyn"), where he is currently incarcerated, he does not have the same options in terms of employment, classes, and exercise that he had at the Federal Correctional Institution,

9

Otisville ("FCI Otisville"), where he was serving his SDNY sentence before being indicted in the instant case. (Def. Reply Ltr. at 2-3.)

In *Barker*, the Court looked at the following bases for finding prejudice: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532 ("[o]f these, the most serious is the last"). As Defendant was already serving a 23-year prison sentence prior to his indictment in this case, he cannot argue that his pretrial detention amounts to oppressive incarceration. Additionly, his claims that certain options are unavailable to him at MDC Brooklyn do not rise to the level of oppressive incarceration. Notably, Defendant does not argue that his defense will be impaired.

Accordingly, Defendant's constitutional speedy trial right has not been violated.

## **CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss the indictment based on an alleged violation of his speedy trial rights is denied.

SO ORDERED

DATED: Brooklyn, New York
April 17, 2013

_____/s/_____
DORA L. IRIZARRY
United States District Judge